941 F.2d 1206
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
GOVERNOR'S ISLAND, a North Carolina Limited Partnership,
Allen Dukes-Jones Island Partnership, Plaintiffs-Appellees,
v.
Joseph M. EWAYS, Defendant-Appellant.
GOVERNOR'S ISLAND, a North Carolina Limited Partnership,
Allen Dukes-Jones Island Partnership, Plaintiffs-Appellants,
v.
Joseph M. EWAYS, Defendant-Appellee.
 Nos. 90-2489, 90-2497.
 United States Court of Appeals, Fourth Circuit.
 Argued May 6, 1991.
Decided Aug. 23, 1991.
 
 1
 Appeals from the United States District Court for the Eastern District of North Carolina, at Raleigh. James C. Fox, Chief District Judge. (CA-85-344-5-CIV)
 
 
 2
 Benjamin Hunt Baxter, Jr., Henderson, Baxter & Alford, P.A., New Bern, N.C., for appellant.
 
 
 3
 Douglas Q. Wickham, Parker, Poe, Adams & Bernstein, Raleigh, N.C., for appellee Dukes-Jones Island.
 
 
 4
 John R. Wallace, Kirby, Wallace, Creech, Sarda & Zaytoun, Raleigh, N.C., (Argued), for appellee Governor's Island; Peter J. Sarda, Kirby, Wallace, Creech, Sarda & Zaytoun, Raleigh, N.C. on brief.
 
 
 5
 E.D.N.C.
 
 
 6
 AFFIRMED.
 
 
 7
 Before ERVIN, Chief Judge, ELIZABETH V. HALLANAN, United States District Judge for the Southern District of West Virginia, sitting by designation, and CLAUDE M. HILTON, United States District Judge for the Eastern District of Virginia, sitting by designation.
 
 OPINION
 CLAUDE M. HILTON, District Judge:
 
 8
 This is an appeal from a memorandum opinion and order entered by the United States District Court for the Eastern District of North Carolina affirming a decision of the United States Bankruptcy Court for the Eastern District of Virginia. Defendant Joseph Eways appeals that portion of the order granting summary judgment in favor of the plaintiffs on the issue of liability. Plaintiffs appeal that portion of the order granting only $294,000 in damages to the partnerships. Finding no error in the decision of the district court below, we affirm.
 
 I.
 
 9
 Governor's Island, a North Carolina Limited Partnership, and Allen & Dukes-Jones Island, a Georgia Partnership (hereinafter "the partnerships"), filed a petition under Chapter 11 of the United States Bankruptcy Code in 1983. Both partnerships owned substantial interests in an island off the coast of North Carolina known as "Jones Island" or "Governor's Island." The partnerships applied to the Bankruptcy Court for authority to have J.L. Todd Auction Company conduct a public sale of the island.
 
 
 10
 The bankruptcy public auction sale was conducted in New Bern, North Carolina on January 14, 1984. Immediately prior to the bidding, it was announced that the island was being sold subject to the rights of third parties who owned fifty percent of the oil and natural gas rights, that the partnerships could not sell land under navigable waters, and that a fifteen-acre tract owned by others was being excluded from the sale. Joseph Eways, appellant in this action, arrived 10 minutes before the sale was to begin and did not hear the announcements. Eways was the highest bidder for the property at the sum of $1,960,000.
 
 
 11
 Immediately following the sale, Eways and the partnerships executed a pre-printed form acknowledging that Eways' bid had been accepted and that Eways had 30 days to close the sale. A pre-printed sentence above the seller's signature line provided that the seller agreed to furnish "good and marketable title." The form also provided that the sale was "subject to announcements made from [the] auction stand and subject to existing utility easements." Eways made two checks payable to the auction company in the total amount of $294,000 as required by the terms of the auction. The Bankruptcy Court entered an order on January 16, 1984 approving the sale. On January 30, 1984, the auction company received notice of dishonor of Eways' checks. Eways thereafter wired $184,000 to the auction company.
 
 
 12
 Eways gave notice to the partnerships that he had not arranged financing because of title defects and would not be able to close by February 22, 1984. The title problems included the fact that 589.81 acres of the island were situated under navigable waterways, that 50% of the oil and natural gas interest of the island were not owned by the sellers, that the title to marshes were vested partially in the state of North Carolina, and that a 15-acre tract was not owned by the sellers. When the transaction did not close, the partnerships filed an application for a forfeiture of Eways' deposit.
 
 
 13
 The bankruptcy court conducted a full hearing, and by order entered March 21, 1984, held that Eways unjustifiably breached his obligation to purchase the property by not paying the purchase price on February 22, 1984. The court allowed Eways to complete the sale provided that he pay the $110,000 balance on the deposit on or before March 23, 1984 and provided that he close the sale on or before April 20, 1984. Eways failed to meet both deadlines. The partnerships thereafter gave notice of their intent to resell the property. On May 5, 1984, the property was sold at a public auction bankruptcy sale for $1,100,000.
 
 
 14
 On May 16, 1984, the partnerships commenced this adversary proceeding against Eways in bankruptcy court seeking judgment in the amount of $860,000, reflecting loss of bargain damages resulting from Eways' failure to close. Eways' answer alleged that the title to the property was defective and that he should be entitled to a return of his deposit. Judge Small granted the partnerships' motion for summary judgment and entered judgment in favor of the partnerships in the amount of the security deposit, or $294,000. Eways appealed the portion of the order granting summary judgment in favor of the partnerships on the issue of liability. The partnerships cross-appealed the portion of the order granting only $294,000 in damages to the partnerships. On August 12, 1985, the U.S. District Court for the Eastern District of North Carolina temporarily abstained from ruling on the appeal to allow the parties time to institute a state court proceeding.
 
 
 15
 The state court action was dismissed by the Superior Court of Pimlico. The North Carolina Court of Appeals affirmed the dismissal. The partnerships thereafter petitioned the U.S. District Court for the Eastern District of North Carolina for the dissolution of the order of abstention. The matter was treated as an appeal from the bankruptcy court. Judge Dupree affirmed the bankruptcy court by a written memorandum opinion and order entered September 14, 1990.
 
 II.
 
 16
 Joseph Eways contends on appeal that the bankruptcy court lacked jurisdiction when it entered final judgment below. The Bankruptcy Amendments and Federal Judgeship Act of 1984 conferred upon bankruptcy judges the authority to render final judgments in all matters within their core jurisdiction. 28 U.S.C. § 157(b)(1). The bankruptcy judge correctly held that an action by the debtors in possession to enforce their sales contract against Eways, the highest bidder at a bankruptcy public auction sale, was a core proceeding. See Arnold Printworks, Inc. v. Apkin, 815 F.2d 165, 171 (1st Cir.1987) (holding that an action by a debtor in possession to collect from a defaulting purchaser on a post-petition contract for sale of its assets was a core proceeding). Eways had no pre-petition claim or right to the debtors' property. As the highest bidder at a duly noticed post-petition public auction sale of the debtor's assets, Eways submitted himself to the jurisdiction of the United States Bankruptcy Court. The granting of summary judgment by the bankruptcy court in favor of the debtors was within the court's core jurisdiction.
 
 III.
 
 17
 Eways contends that the defects he discovered in the title to Governor's Island relieved him of his obligation to purchase the property as the auction form executed by the parties on the day of sale required the sellers to convey good and marketable title. Because the partnerships affirmatively disclosed to all bidders the title defects of which Eways complains, the district court and the bankruptcy court correctly held that Eways, as the highest bidder at a bankruptcy auction sale, breached his obligation to purchase Governor's Island.
 
 
 18
 Eways received by mail a brochure advertising the auction of Governor's Island. The brochure contained photographs of the property and depicted its waterways, marshlands, and timber. The brochure indicated that the property could be inspected prior to the auction and that plats and additional information could be obtained from the auction company. The brochure stated that information contained in the brochure was "derived from sources believed to be correct, but is not guaranteed." The brochure further provided that the sale was subject to a 15 percent down payment and the balance in thirty days, and that the sale was subject to any announcement made from the auction stand which would "take precedence over any printed matter in this brochure."
 
 
 19
 Immediately prior to the auction of the property, it was announced that (1) the island was being sold subject to the rights of third parties who owned fifty percent of the oil and natural gas rights; (2) that the partnerships could not sell the land situated under navigable waters; and (3) that a fifteen-acre tract owned by others was being excluded from the sale. Eways was in possession of a plat that depicted the portion of the island's acreage that constituted marshlands and water. The auction contract signed by Eways provided that the sale was "subject to announcements made from [the] auction stand and subject to existing utility easements."
 
 
 20
 The doctrine of caveat emptor applies to purchasers at bankruptcy sales. See In re Rigden, 795 F.2d 727, 732 (9th Cir.1986); In re Laughinghouse, 51 B.R. 869, 876 (Bankr.E.D.N.C.1985); Handlan v. Bennett, 51 F.2d 21, 24 (4th Cir.1931). A purchaser at a bankruptcy sale acquires from the trustee the title that is the right, title, and interest of the debtor. Roby v. Colehour, 146 U.S. 153 (1892); Handlan v. Bennett, 51 F.2d at 24. In Handlan, this court held:
 
 
 21
 It must be remembered that the doctrine of caveat emptor applies in all its force to judicial sales and that it will be conclusively presumed that the purchaser agrees to take the title such as it is and that if he permits the sale to be confirmed without objection, he cannot afterward refuse to pay the purchase money because of imperfection of title or for errors or irregularities in the proceedings under which he purchased. This rule prevails in bankruptcy sales unless the order of sale itself otherwise provides.
 
 
 22
 Id. Eways was on notice that the property was being sold subject to certain existing defects in title. As the highest bidder and purchaser at a bankruptcy sale, Eways bore the burden of inspecting the property and inquiring as to the announced title defects and may not now renege on his obligation to purchase the property.
 
 IV.
 
 23
 The auction form signed by the parties on the day of the sale provided that in the event of default, fifteen percent of the purchaser's deposit would be retained by the seller as liquidated damages. The partnerships contend on appeal that the courts below erred in granting only $294,000 as liquidated damages to the partnership instead of loss of bargain and consequential damages. The partnerships argue that Eways should not be allowed to avail himself of the liquidated damages clause when he breached the contract by failing to deposit the required fifteen percent of the purchase price.
 
 
 24
 Liquidated damage clauses are binding and enforceable as long as the amount sought does not impose a penalty on the breaching party. Kinston v. Suddreth, 146 S.E.2d 660, 662 (N.C.1966). Courts have upheld liquidated damages provisions in bankruptcy sales contracts. See In re Lipman Bros., Inc., 35 B.R. 178, 181 (Bankr.D.Mass.1983); In re Kleman, 22 B.R. 757, 761 (Bankr.N.D.Ill.1982); In re Sombrero Reef Club, Inc., 15 B.R. 177, 184 (Bankr.S.D.Fla.1981). The liquidated damages clause contained in the auction form provided that in the event of default, the fifteen percent deposit would be retained by the seller as liquidated damages. The fact that Eways breached his obligations under the contract does not negate the validity of the liquidated damages clause. Because the liquidated damages clause contained in the purchase form does not constitute a penalty, the district court and bankruptcy court correctly limited the damages recoverable by the partnerships to $294,000, or the 15% deposit required by the auction sales contract.
 
 
 25
 For the foregoing reasons, the disposition of the case below is
 
 
 26
 AFFIRMED.
 
 
 27
 ERVIN, Chief Judge, and ELIZABETH V. HALLANAN, District Judge, joined.